## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

RAJIV KANANI AND ASITA
KARIA,

          Plaintiffs,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC., EQUIFAX
INFORMATION SERVICES, LLC,
TRANS UNION LLC, AND
NATIONAL CREDIT SYSTEMS,
INC.,

        Defendants.

Case No.:

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Rajiv Kanani and his wife Asita Karia ("Plaintiffs"), by and through the undersigned counsel, bring this action on an individual basis, against Experian Information Solutions, Inc., ("Experian"); Equifax Information Services, LLC ("Equifax"); Trans Union, LLC ("Trans Union") (collectively, the "Credit Bureau Defendants"); and National Credit Systems, Inc. ("National")   (all defendants collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.     One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

over the possible mistaken turn-down of a consumer for a luxury item
as we are over the possible destruction of his good name without his
knowledge and without reason. Shakespeare said, the loss of one's good
name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec.

36570 (1970)] (emphasis added).

8.      The FCRA also requires CRAs to conduct a reasonable reinvestigation

to determine whether information disputed by consumers is inaccurate and record

the current status of the disputed information, or delete the disputed information,

before the end of the 30-day period beginning on the date on which the CRA receives

the notice of dispute from the consumer. This mandate exists to ensure that consumer

disputes are handled in a timely manner and that inaccurate information contained

within a consumer's credit report is corrected and/or deleted so as to not prevent said

consumer from benefiting from his or her credit and obtaining new credit.

9.      In light of these important findings and purposes, Congress specifically

noted "a need to insure that [CRAs] exercise their grave responsibilities with

fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C.

§ 1681(a)(4).

10.     The FCRA also requires furnishers of information, a creditor or other

third party that provides information about consumer to a CRA, upon notice, to

conduct a reasonable reinvestigation of all disputes with regard to the completeness

RAJIV KANANI AND ASITA KARIA V.
                    EXPERIAN INFORMATION SOLUTIONS,
                    INC., ET AL
                    Complaint

or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.    Plaintiffs' claims arise out of the Credit Bureau Defendants' blatantly inaccurate credit reporting, wherein the Credit Bureau Defendants reported to Plaintiffs' potential creditors that Plaintiffs owed a debt that was in collections when this was, in fact, not true.

12.    Accordingly, Plaintiffs bring claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.    Plaintiffs also bring a claim against Defendant National for failing to r investigate Plaintiffs' disputes fully and properly and review all relevant information provided by Plaintiffs and the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

14.    As part of this action, Plaintiffs seek actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, as described herein.

## PARTIES

15.    Rajiv Kanani and his wife Asita Karia ("Plaintiffs")are natural persons residing in Windermere, Florida, and each a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.    Defendant Equifax Information Services, LLC ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, is authorized to do business in the State of Florida, including within this District. Equifax can be served at their registered agent c/o Corporation Service Company located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

17.    Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers to furnish consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

18.    Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of Florida, including within this District.

19.    Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

20.    Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a limited liability company with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of Florida, including within this District. Trans Union can be served at their registered agent c/o Illinois Corporation Service Company located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

21.    Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers to furnish consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

22.     Defendant National Credit Systems, Inc. ("National") is a collection company with its headquarters in Georgia, and address at 1775 The Exchange SE, Suite 300, Atlanta GA 30339. NCS is authorized to do business in the State of Florida, including within this District. National can be served at their registered agent c/o C T Corporation Systems located at 1200 South Pine Island Road, Plantation, FL 33324.

23.     National is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

**A.     Summary of the Fair Credit Reporting Act**

26.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

rights of consumers to fairness and accuracy in the reporting of their credit information.

27.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

28.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

29.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

RAJIV KANANI AND ASITA KARIA V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL
Complaint

30.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## B.     Factual Background

31.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting.  Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

32.     The Credit Bureau Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sell credit scores.

33.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like the Credit Bureau Defendants, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

34.     Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like the Credit Bureau Defendants, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

35.     The Credit Bureau Defendants' consumer reports generally contain the following information:

 (a) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

 (b) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

 (c) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

 (d) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

36.     The Credit Bureau Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRA by furnishers.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

37.     The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like the Credit Bureau Defendants) to make lending decisions.

38.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the Credit Bureau Defendants' consumer reports.

39.     The information the Credit Bureau Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

40.     FICO Scores are calculated using information contained in the Credit Bureau Defendants' consumer reports.

41.     The Credit Bureau Defendants know that FICO and other third-party algorithms (as well as the algorithms owned by the Credit Bureau Defendants) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

42.     The Credit Bureau Defendants know that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

43.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

44.     The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

45.     The Credit Bureau Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

46.     The Credit Bureau Defendants fail to employ reasonable procedures to assure the maximum possible accuracy of the information that they report about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

47.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against the Credit Bureau Defendants for their inaccurate credit reporting.

48.     Thus, the Credit Bureau Defendants are on continued notice of their respective inadequate reporting procedures. Specifically, the Credit Bureau Defendants are on notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

49.     The Credit Bureau Defendants have received and documented many disputes from consumers complaining that Credit Bureau Defendants reported inaccurate information about them.

**C.     Plaintiffs Enter into Rental Agreements**

50.     On April 28, 2022, Mr. Kanani, his wife Ms. Karia, and their elderly parents entered into rental agreements to rent two apartments from the landlord of Encantada at Dove Mountain Apartments ("Dove Mountain") in Arizona.

51.     Soon after the family moved into their two apartments at Dove Mountain, they discovered to their horror that the apartments were infested with dangerous scorpions and snakes.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

52.     This information was deliberately concealed and not disclosed by the landlord before the Plaintiffs signed their rental agreements, putting the family, their 3-year-old daughter, and elderly parents in extreme and imminent danger.

53.     Petrified by this sudden nightmare situation, Plaintiffs consulted a pest control specialist who visited their home and confirmed what they had already discovered that the apartment building was infested with scorpions and snakes.

54.     To their continued horror, Plaintiffs and their family started seeing more scorpions and snakes in or around their home. Plaintiffs were even forced to call 911 to have someone come and remove a rattlesnake from their balcony.

**D.     Landlord Scams Plaintiffs for the Second Time**

55.     To end this nightmare of an experience and to avoid being victims of these deadly scorpions and snakes, the Plaintiffs were forced to vacate the Dove Mountain apartments.

56.     Plaintiffs had an oral agreement with the disingenuous Dove Mountain apartments landlord to move out.

57.     In what would turn out to be yet another deception from the landlord, the landlord cajoled the Plaintiffs to move to one of its other properties known as Encantada Steam Pump.

58.     However, when it came time to move, Encantada Steam Pump told Plaintiffs and their family that the rents had increased and that they either pay the increased rent or they would be without a home.

59.     Shocked and in disbelief by the horrible scam strategies the leasing company was heartlessly pursuing to the detriment of Plaintiff and their family, Plaintiffs decided to move back to Florida with their family.

60.     Upon moving out, Plaintiffs paid all the rent owed up until the date they packed and left the scorpion and snake-infested apartments.

61.     The Plaintiffs therefore did not and do not owe any debt to the scamming landlord at Dove Mountain.

62.     The deceptive landlord entered into a spoken walkaway agreement with the Plaintiffs which absolved the married couple and their family of any financial obligations flowing from the fraudulently procured rental agreement after making the final rental payment before moving back to Florida.

**E.     Deceptive Landlord Falsely Claims Rent Money Not Owed by Plaintiffs**

63.     Despite the absence of any debt owed, the deceptive Dove Mountain landlord sent a letter to the Plaintiffs they received on August 4, 2022.

64.     The deceptive landlord claimed in the letter that the Plaintiffs owed outstanding rent and a Lease Termination Fee.

65.     Both claims by the deceptive landlord were patently false.

**F.      Defendant Furnishes False Information about Plaintiffs**

66.     By a hunch, Plaintiffs checked their credit reports and were alarmed to see a collection account with Defendant National Credit Systems. Defendant never communicated at all with Plaintiffs about this false debt.

67.     The original creditor for this false debt is listed in the Plaintiffs' reports by Credit Bureau Defendants as Encantada at Dove Mountain Apartment, the very scorpion and snake-infested apartments Plaintiffs were conned into renting and forced to vacate after discovering the deadly deception.

68.     On reviewing his credit report, Mr. Kanani was distressed to see his excellent credit having dropped from 840 down to 720 all because of the collection account furnished by Defendant National and willfully or negligently reported by the Credit Bureau Defendants.

69.     The false collection account is reported as follows in Plaintiffs' respective credit reports:

Account at issue:

Collection Agency: National Credit Systems

Original Creditor: Encantada at Dove Mountain Apartments

Account number: xxxxx72

Date Opened: 12/30/2022

Balance: $5,380

**G.    Plaintiff's First Dispute to the Credit Bureau Defendants and Defendant National Credit Systems Regarding the Inaccurate Credit Reporting**

70.    On August 14, 2023, extremely shocked, surprised, and embarrassed at the Credit Bureau Defendants' inaccurate reporting, Plaintiffs disputed with each of the Credit Bureau Defendants the inaccurate collection account placed their respective credit reports by the Credit Bureau Defendants.

71.    Defendant Equifax received Plaintiff Kanani's dispute on August 19, 2023, and his wife Plaintiff Karia's dispute was received by Equifax on August 14, 2023, as confirmed by USPS.

72.    Defendant Trans Union received Plaintiffs' dispute letter on August 19, 2023, as confirmed by USPS.

73.    On August 23, 2023, Plaintiffs received a letter from Experian informing them that Experian took no action on the Plaintiffs' dispute letter because, in the Defendant's view, the dispute letter was not sent directly by Plaintiffs or someone or an entity authorized by Plaintiffs.

74.    On September 5, 2023, Plaintiffs sent another dispute letter to Defendant Experian. Defendant received Plaintiffs' second dispute letter on September 11, 2023, as confirmed by USPS.

75.    Plaintiffs also sent a dispute to Dove Mountain in which Plaintiffs detailed the chronology of events as described above leading to their moving out of the apartments owing no money to Dove Mountain.

76.    Dove Mountain ignored the communication from the Plaintiffs and has not responded to the valid dispute to date.

77.    Plaintiffs explained in their dispute letters to Credit Bureau Defendants and Dove Mountain that the collection amount reported in their respective credit reports is inaccurate.

78.    Plaintiffs requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and for each to send her a corrected copy of her credit report.

## H.    Defendant Equifax's Unreasonable Dispute Reinvestigation

79.    Upon information and belief, Equifax sent Defendant National an automated credit dispute verification ("ACDV") pursuant to Plaintiffs' August 4, 2023, dispute to Equifax, which Equifax acknowledged receipt in letters sent by Equifax and received by Plaintiffs on September 14 and 15.

80.    Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiffs in support of Plaintiffs' dispute.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

81.     Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiffs' August 4, 2023 2022 dispute.

82.     Thereafter, Defendant Equifax failed to correct or delete the false Defendant National's collection account appearing in Plaintiffs' credit files.

83.     Equifax failed to conduct a reasonable reinvestigation of Plaintiffs' dispute tendered on August 4, 2023 , or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

## I.     Defendant Experian's Unreasonable Dispute Reinvestigation

84.     Upon information and belief, Experian sent Defendant National an automated credit dispute verification ("ACDV") pursuant to Plaintiffs' August 4, 2023, dispute to Experian, which Experian acknowledged in a letter received by Plaintiff Kanani on August 23, 2023

85.     Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

86.     Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's August 4, 2023, dispute.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

87.     Thereafter, Defendant Experian failed to correct or delete the false Defendant National's collection account appearing in Plaintiffs' credit files.

88.     Experian failed to conduct a reasonable reinvestigation of Plaintiffs' dispute tendered on August 4, 2023, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**J.    Defendant Trans Union's Unreasonable Dispute Reinvestigation**

89.     Upon information and belief, Trans Union sent Defendant National an automated credit dispute verification ("ACDV") pursuant to Plaintiffs' August 4, 2023, dispute to Trans Union, which Trans Union acknowledged in a latter received by Plaintiff Kanani on September 7, 2023.

90.     Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

91.     Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiffs' August 4, 2023, dispute.

92.     Thereafter, Defendant Trans Union failed to correct or delete the false Defendant National's collection account appearing in Plaintiffs' credit files.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

93.     Trans Union failed to conduct a reasonable reinvestigation of Plaintiffs' dispute tendered on August 4, 2023 , or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**K.    The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes**

94.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

95.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

96.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

97.     It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

98.    Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

99.    Metro 2 codes are used on an industry-wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

100.   The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and credit reporting agencies.

101.   These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

102.   Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

103.   The data furnishers, like Defendant National, then have an obligation under the FCRA to conduct a reasonable reinvestigation concerning the disputed credit account and review all relevant information provided by the consumer with

the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

104.   Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

## L.   Defendant   National   Credit   Systems'   Unreasonable   Dispute Reinvestigation

105.   Upon information and belief, in or about August 4, 2023, Defendant National received Defendant Equifax's ACDV and failed to conduct a reasonable investigation concerning the information disputed by Plaintiffs.

106.   Upon information and belief, National failed to review all relevant information provided by Defendant Equifax regarding Plaintiffs' dispute tendered in or about August 24, 2023.

107.   Upon information and belief, National verified the disputed information as accurate to Defendant Equifax in or about August or September 2023.

108.   Upon information and belief, on or about August 18, 2023, National received Defendant Experian's ACDV and failed to conduct a reasonable investigation concerning the information disputed by Plaintiffs.

109.   Upon information and belief, National failed to review all relevant information provided by Defendant Experian regarding Plaintiffs' dispute tendered in or about August 4, 2023.

110.   Upon information and belief, in or about August or September 2023, National verified the disputed information as accurate to Defendant Experian.

111.   Upon information and belief, on or about August 19, 2023, National received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation concerning the information disputed by Plaintiffs.

112.   Upon information and belief, National failed to review all relevant information provided by Defendant Trans Union regarding Plaintiffs' dispute tendered on August 4, 2023.

113.   Upon information and belief, in or about August or September 2023, National verified the disputed information as accurate to Defendant Trans Union.

114.   Defendant National violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation concerning the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

**M.    Plaintiffs' Second Dispute to Defendant Experian Regarding the Inaccurate Credit Reporting**

115.   As of September 5, 2023, Defendant Credit Bureaus were reporting the false Defendant National collection account. As of September 5, 2023, Defendant Equifax was reporting that Plaintiffs owed Defendant National $5,380, which is false because Plaintiffs do not owe Defendant National this amount or any other amount.

116.   As of September 5, 2023, , Defendant Trans Union was reporting that Plaintiffs owed Defendant National $5,380, which is false because Plaintiffs do not owe Defendant National this or any other amount.

117.   As of September 5, 2023, Defendant Experian was reporting that Plaintiffs owed Defendant National $5,380, which is false because Plaintiffs do not owe Defendant National this or any other amount.

118.   On September 5, 2023, extremely shocked, surprised, and embarrassed at the Credit Bureau Defendants' inaccurate reporting, Plaintiffs disputed the false collection account for the second time with Defendant Experian.

119.   Plaintiffs explained that they did not owe the money appearing in their respective credit reports as owed by Plaintiffs to Defendant National and that therefore the reporting by Experian was inaccurate.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

120.   Plaintiffs requested that Experian reinvestigate the disputed information, correct the reporting, and to send her a corrected copy of her credit report.

## N.   Defendant Experian's Second Unreasonable Reinvestigation

121.   Upon information and belief, Defendant Experian sent Defendant National an automated credit dispute verification ("ACDV") pursuant to Plaintiffs' September 5, 2023, dispute to Defendant Experian.

122.   Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiffs in support of Plaintiffs' dispute.

123.   Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiffs' September 5, 2023, dispute.

124.   Thereafter, Defendant Experian failed to correct or delete false collection account in Plaintiffs' credit files.

125.   Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiffs' second dispute tendered on September 5, 2023 , or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

**O.     Defendant National's Unreasonable Dispute Reinvestigation**

126.   Upon information and belief, in or about August 19, 2023, Defendant National received Defendant Equifax's ACDV and failed to conduct a reasonable investigation concerning the information disputed by Plaintiffs.

127.   Upon information and belief, Defendant National failed to review all relevant information provided by Defendant Equifax regarding Plaintiffs' August 14, 2023 dispute.

128.   Upon information and belief, in or about September 15, 2023, Defendant National verified the disputed information as accurate to Defendant Equifax.

129.   Upon information and belief, on or about August 18, 2023, and on or about September 11, 2023, Defendant National received Defendant Experian's ACDV and failed to conduct a reasonable investigation concerning the information disputed by Plaintiffs.

130.   Upon information and belief, Defendant failed to review all relevant information provided by Defendant Experian regarding Plaintiffs' August 14, 2023 and September 5, 2023 disputes.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

131.   Upon information and belief, in or about August 23, 2023 and on or about September 11, 2023, Defendant National verified the disputed information as accurate to Defendant Experian.

132.   Upon information and belief, in or about August 19, 2023, Defendant National received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation concerning the information disputed by Plaintiffs.

133.   Upon information and belief, Defendant National failed to review all relevant information provided by Defendant Trans Union regarding Plaintiffs' August 18, 2023, dispute.

134.   Upon information and belief, on or about September 7, 2023, Defendant National verified the disputed information as accurate to Defendant Trans Union.

135.   Defendant violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation concerning the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

136.   Plaintiffs reasonably believe that Defendant National continued to furnish data to the national credit bureaus inaccurately claiming that Plaintiffs owed Defendant National $5,380, which is false.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

137.   Plaintiffs reasonably believe that the Credit Bureau Defendants continued to publish that Plaintiffs owed this false amount on or after August 4, 2023.

138.   As a result of furnishing the inaccurate and false information about a debt Plaintiffs do not owe, and despite Plaintiffs' disputing the inaccurate and false information with Defendant National, the Defendants made it practically impossible for Plaintiffs to continue to obtain credit.

139.   Indeed, even though Plaintiff Kanani applied and was approved for a credit card on November 1, 2023, his wife Plaintiff Karia applied but was denied a credit card by American Express on October 7, 2023.

140.   Plaintiff Karia tried once again to apply for a credit card, this time with Capital One.

141.   On information and belief, Plaintiff Kanani's approved credit card is at a higher interest rate than it would be but for Defendant's sullying his otherwise excellent credit with the inaccurate and false collection account information.

142.   At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

143.   At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiffs herein.

144.   As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

145.   The Credit Bureau Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

costs.  Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

146.  As a result of Defendants' conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of ability to purchase and benefit from their good credit rating; detriment to their credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendants Equifax, Experian, and Trans Union)

147.  Plaintiffs re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

148.  The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

RAJIV KANANI AND ASITA KARIA V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL
Complaint

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

149.   On numerous occasions, Defendants Equifax, Experian, and Trans Union prepared patently false consumer reports concerning Plaintiffs.

150.   Defendants Equifax, Experian, and Trans Union readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

151.   Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiffs.

152.   Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiffs.

153.   Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

in the preparation of the credit reports and credit files it published and maintained concerning Plaintiffs.

154.   As a result of Defendants' Equifax, Experian, and Trans Union conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of ability to purchase and benefit from their good credit rating; detriment to their credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

155.   Defendants Equifax, Experian, and Trans Union's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

156.   Plaintiffs are entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

## COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendants Equifax, Experian, and Trans Union)

157.   Plaintiffs re-allege and incorporate by reference the allegations set forth in preceding paragraphs as if fully stated herein.

158.   The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

159.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

160.   On at least one occasion in August 2023, Plaintiffs disputed the inaccurate information with Equifax, Experian, and Trans Union and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to them, namely, the collection account from Defendant National appearing in Plaintiffs credit reports.

161.  In response to Plaintiffs' dispute, Equifax failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiffs' credit files.

162.  In response to Plaintiffs' dispute, Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiffs' credit files.

163.  In response to Plaintiff's dispute, Trans Union failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiffs' credit files.

164.  The Credit Bureau Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiffs; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiffs' credit files.

165.  As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of ability to purchase and benefit from their good credit rating; detriment to their credit rating; the expenditure

of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

166.   The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

167.   Plaintiffs are entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### 15 U.S.C. § 1681s-2(b)
**Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer
(Only Claim for Relief Against Defendant National)**

168.   Plaintiffs re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

169.   Defendant National furnished the inaccurate information relating to Plaintiffs to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

170.   Defendant National violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiffs' dispute, or otherwise by failing to fully and properly investigate Plaintiffs' dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiffs to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union; and, by failing to cease furnishing inaccurate information relating to Plaintiffs to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

171.   As a result of Defendant National's conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of ability to purchase and benefit from their good credit rating; detriment to their credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

RAJIV KANANI AND ASITA KARIA V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL
Complaint

172. Defendant National's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

173. Plaintiffs are entitled to recover attorneys' fees and costs from Defendant Shellpoint in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays for the following relief:

a) Determining that Defendants negligently and/or willfully violated the FCRA;

b) Awarding Plaintiffs' actual, statutory, and punitive damages as provided by the FCRA;

c) Awarding Plaintiffs' reasonable attorneys' fees and costs as provided by the FCRA; and,

d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

RAJIV KANANI AND ASITA KARIA V.
EXPERIAN INFORMATION SOLUTIONS,
INC., ET AL
Complaint

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: December 28, 2023                    **CONSUMER ATTORNEYS**

*/s/ Catherine Tillman*
Catherine Tillman, Esq., (FL # 0057663)
8245 N. 85th Way
Scottsdale, AZ 85258
T: (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com

*Attorney for Plaintiffs*
*Rajiv Kanani and Asita Karia*