**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RAJIV KANANI AND ASITA KARIA,

Plaintiffs,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION LLC, AND NATIONAL CREDIT SYSTEMS, INC.,

Defendants.

Case No.: 6:23-cv-02483-WWB-EJK

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., AND TRANS UNION LLC'S MOTION TO DISMISS**

Plaintiffs Rajiv Kanani and Asita Karia ("Plaintiffs") submit this Memorandum in Opposition to Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC's ("Trans Union") (together as "Defendants") Motion to Dismiss Plaintiff's Complaint and accompanying Memorandum in Support [Dkt. No. 37, the "Motion"].

## I. INTRODUCTION

Plaintiffs' Complaint and Demand for Jury Trial [Dkt. No. 1, the "Complaint] plausibly alleges that Defendants' either negligently, recklessly, or willfully failed to conduct a reasonable investigate into multiple disputes issued by Plaintiffs in accordance with federal law, violating the Fair Credit Reporting Act and causing Plaintiffs financial, reputational, and emotional harm.

Defendants now moves the Court under Fed. R. Civ. P. 12(b)(6) for dismissal, arguing that whether Plaintiffs owe the debt at issue is a "legal" question and thus Defendants were not required to comply with the FCRA's reinvestigation requirement.[1] This argument is predicated on gross misinterpretations of Plaintiffs' allegations in this case. For this reason, described in full below, Plaintiffs respectfully request that the Court deny Defendants' Motion in full.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Accepting the allegations in the Complaint as true and construing inferences in Plaintiffs' favor – as is appropriate under Rule 12 – the following facts form the established background against which Defendants' Motion is to be analyzed:

On April 28, 2022, Mr. Kanani, his wife Ms. Karia, and their elderly parents

---

[1] Defendants also raise arguments against the strawman that "Plaintiffs allege that the CRA Defendants should not be reporting the collections account because it is hurting their credit." Motion, pgs. 10-12. Nowhere in Plaintiffs' Complaint is it asserted that Defendants should not report the inaccurate reporting **because of the harm** caused. Defendants should not be reporting the inaccurate information **because it is inaccurate**. The harm discussed in the Complaint is obviously included as an allegation of damages, not liability.

entered into rental agreements to rent two apartments at Dove Mountain Apartments, in Arizona, operated by the landlord, Encantada ("Encantada"). Complaint, ¶ 50. Unbeknownst to them, Encantada knew and concealed from Plaintiffs that the apartments were infested with snakes and scorpions. *Id.*, ¶¶ 51-54. In order to escape the infestation, Plaintiffs entered into an oral agreement with Encantada to allow Plaintiffs to move out of the infested apartment and into another apartment complex operated by Encantada: the Encantada Steam Pump. *Id.*, ¶¶ 55-57.

Unfortunately, when it came time to move, Encantada informed Plaintiffs – for the first time – that rent for the Steam Pump apartments had increased and that Encantada would not be honoring the pricing of the original lease. Complaint., ¶¶ 57-58. Finding themselves the victims of what was obviously a scam, and stuck between fear for personal safety, payment of increased rent that they could not afford, and homelessness, Plaintiffs decided to move in with family in Florida. *Id.*, ¶ 59.

Upon moving out Plaintiffs were current on their rental obligations under the original lease. Complaint, ¶ 60. Plaintiffs therefore entered into an oral "walkaway" contract wherein Plaintiffs waived their claims for fraud in exchange for Encantada waiving any remaining payments owed under the lease. *Id.*, ¶¶ 61-62. On August 4, 2022, despite the mutual walkaway, Encantada sent Plaintiffs a collection letter demanding payment for outstanding rents and manufactured fees. *Id.*, ¶¶ 63-64.

On a date not yet known, co-defendant National Credit Systems, Inc. ("NCS") was retained by Dove Mountain to collect monies not owed. NCS thereafter reported the Dove Mountain account to the Defendants, unfairly tarnishing Plaintiffs' otherwise stellar credit reputations. Complaint, ¶¶ 66-69. Plaintiffs disputed this inaccurate reporting with all three Defendants pursuant to the FCRA's established process under 15 U.S.C. § 1681i, explaining in detail the chronology of events and agreements with Encantada and requesting that the false reporting be removed. *Id.*, ¶¶ 70-78.

All three Defendants received Plaintiffs' disputes. Complaint, ¶¶ 79-93. At this point in litigation, it is unknown exactly what Defendants did to investigate the dispute letters – if they did anything at all. *Id.* Plaintiffs are individual consumers not privy to Defendants' internal procedures.[2] All that is known is that Defendants all responded to the disputes by continuing to report the false information on

---

[2] As this Court's sister-district in Georgia has aptly noted, if FCRA consumer-plaintiffs were required to allege the specifics of a CRA or furnisher's procedures in the Complaint, it "would pose an almost insurmountable barrier to consumers wishing to bring meritorious FCRA claims. Plaintiffs would be precluded from vindicating their rights at the outset unless they somehow had insider knowledge of a furnisher's internal investigatory procedures prior to filing suit. It is hard to discern how a consumer could know such specific facts without the benefit of discovery. Neither Federal Rule of Civil Procedure 8 nor the plain text of the FCRA requires such a heightened showing at the Motion to Dismiss stage." *Id.* (citing *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003) ("Courts typically allow the pleader an extra modicum of leeway where the information supporting the complainant's case is under the exclusive control of the defendant."). The same logic is aptly applied to 15 U.S.C. § 1681i claims alleged against a consumer reporting agency because "few consumers would ever get information about the reasonableness of a credit reporting agency's internal procedures before a lawsuit is filed. Rather, internal policies often come to light through the discovery process." *Anderson v. Equifax Info. Servs. LLC*, 274 F. Supp. 3d 1221, 1237 (D. Kan. 2017).

Plaintiffs' consumer credit.

On or about September 5, 2023, after learning that Experian had refused to correct its reporting, Plaintiffs sent a second dispute to Experian. Complaint, ¶ 118. Again, at this point in litigation, it is unknown exactly what Experian did to investigate the second dispute letter – if it did anything at all. *Id.*, ¶¶ 121-125. All that is known is that Experian refused to correct the false reporting. *Id.*

In refusing to reasonably investigate Plaintiffs' dispute letters, Defendants continued to portray Plaintiffs as deadbeats who skipped out on their lease without payment. *Id.* Out of other options, Plaintiffs filed this well-deserved lawsuit.

## III. LEGAL STANDARD

### A. REVIEW OF A RULE 12(b)(6) MOTION

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and "draw all reasonable inferences in favor of" the plaintiff. *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1043 (11th Cir. 2019)

The Supreme Court has explained that allegations can be sufficient to

withstand a motion to dismiss even if the district court concludes that it is unlikely that the plaintiff can prove them:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

**B. STATEMENT OF 15 U.S.C. § 1681 CLAIMS**

The FCRA imposes certain duties on those who – like Defendants – take it upon themselves to acquire, maintain, and sell consumer credit information. These "consumer reporting agencies" ("CRAs") are required, whenever they prepare a consumer report, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

If the "completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer, CRAs are required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" and if the information is inaccurate to "promptly delete that item of information" or "modify that item of information, as appropriate…" 15 U.S.C. § 1681i(a).

To state a valid FCRA claim pursuant to § 1681e(b), Plaintiffs must plead that

> (1) the CRA published an inaccurate consumer report to a third party; (2) in publishing its consumer report, the CRA failed to follow reasonable procedures to assure the maximum possible accuracy of the consumer report; and (3) the plaintiff suffered actual damages as a result of the CRA's failure to follow reasonable procedures.

*Lazarre v. Bank*, 780 F. Supp. 2d 1330, 1335-36 (S.D. Fla. 2011) (citations omitted).

To state a valid FCRA claim pursuant to § 1681i, Plaintiffs must plead that

> (1) [their] credit report contains inaccurate or incomplete information; (2) [they] notified [Defendants] of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) [Defendants] failed to respond or conduct a reasonable reinvestigation of the disputed items; [and] (5) the failure to reinvestigate caused [Plaintiffs] to suffer out-of-pocket losses or intangible damages such as humiliation or mental distress.

*Id.*, at 1334 (citation and internal quotation marks omitted).

## IV. ARGUMENT

It has long been settled in federal jurisprudence that "when it comes to the FCRA, 'accurate' means more than just 'technically correct.'" *Chaitoff v. Experian Info. Sols.*, 79 F.4th 800, 812 (7th Cir. 2023) (citing *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984)). Instead, "[a] credit report is inaccurate […] if it omits accurate information that could reasonably be expected to adversely affect a consumer's creditworthiness." *Chaitoff*, 79 F.4th at 812; S*ee also Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998); *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 943 (6th Cir. 2020) (citing *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012)); *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir.

2010) (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)); *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 148 (4th Cir. 2008) (citing *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)).

The Eleventh Circuit was – until recently – one of the last federal appellate courts not to expressly adopt the reasoning set forth by the United States Court of Appeals for the District of Columbia Circuit forty years ago in *Koropoulos* (734 F.2d at 40). However, that changed in 2020, when the Eleventh Circuit joined the other Circuits in finding that "a report that contains factually correct information but nonetheless misleads its users as to its meaning or implication" is inaccurate under the FCRA. *Erickson v. First Advantage Background Servs.*, 981 F.3d 1246, 1252 (11th Cir. 2020).

Thus, the question before the Court is whether Plaintiffs' Complaint alleges sufficient facts to support a plausible determination that Defendants' reporting was either patently false or materially misleading. *Id.*

This inquiry begins and ends with the allegation – explicitly made in the Complaint – that Defendants reported debts as owed by Plaintiffs that were not – in fact – owed. Plaintiffs allege that the original creditor of the alleged debt – Encantada – orally waived future payments in a mutual walkaway agreement with Plaintiffs. Complaint, ¶ 62. Whether Plaintiffs and Encantada did enter into that agreement is a question of fact, and one which is to be answered in Plaintiffs' favor under Rule

12. *See Armao v. McKenney*, 218 So. 3d 481, 485 (Fla. Dist. Ct. App. 2017) ("The existence of an oral contract is an issue for the finder of fact."); *Next Century Communications Corp. v. Ellis*, 318 F.3d 1023, 1025 (11th Cir. 2003) (For purposes of Rule 12 litigation, a "plaintiff's factual allegations are accepted as true.").

Plaintiffs have alleged they do not owe a debt to Encantada. Complaint, ¶ 62. Defendants are reporting that Plaintiffs do owe such a debt. *Id.*, ¶ 69. Thus, Plaintiffs have alleged that Defendants are reporting information about Plaintiffs that is both patently false and materially misleading.[3] This is sufficient to fulfill the inaccuracy element of a § 1681s-2(b) claim. *See Erickson*, 981 F.3d at 1252.

Defendants attempt to avoid this straightforward conclusion by reframing Plaintiffs Complaint as alleging a "legal" instead of "factual" inaccuracy. *See* Motion, pgs. 6-9. As an aside, it is not "well settled" law that the FCRA distinguishes between "legal" and "factual" inaccuracies. Motion, pg. 6. The Eleventh Circuit has never endorsed the "legal versus factual" distinction in a published, binding opinion. And far from being "well settled", this question is currently the subject of ongoing debate in federal courts throughout the country, drawing the attention of federal

[3] Contrary to Defendants' representation, Plaintiffs most certainly **do** "dispute that the CRA Defendants' reporting of the collections account was factually accurate." Motion, pg. 6.

agencies including both the CFPB[4] and the FTC[5]. In fact, in mid-2023, the Second Circuit Court of Appeals issued a unanimous opinion holding that "there is no threshold inquiry under the FCRA as to whether any purportedly inaccurate information is legal or factual in nature." *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023).

This is – of course – a correct statement under both a textual analysis of 15 U.S.C. § 1681, *et seq*., and common sense, because **all** consumer debts reported by furnishers are the result of alleged contract formation and therefore are "legal" in nature. Under Defendants' reading of the "factual versus legal" dichotomy, **all** consumer account disputes would therefore be labeled "legal disputes" and render the FCRA's reinvestigation provision utterly meaningless. Indeed, such a rule would not only undermine the FCRA, rendering § 1681i as surplusage, but it would relegate consumer disputes to state law when Congress intended the disputes to be a matter of federal law. A dispute under the FCRA cannot be rendered null simply because a defendant's counsel can think of some way to construe the dispute as involving a "legal" question after the fact.

**Regardless**, the Court need not weigh in on this ongoing debate, because

---

[4] Sessa v. Trans Union, LLC, Consumer Financial Protection Bureau, https://www.consumerfinance.gov/compliance/amicus/briefs/sessa-v-trans-union-llc/ (last visited Feb 29, 2024).

[5] FTC Joins Amicus Brief Opposing Liability Shield for Sloppy Credit Reports, Federal Trade Commission, https://www.ftc.gov/news-events/news/press-releases/2022/05/ftc-joins-amicus-brief-opposing-liability-shield-sloppy-credit-reports (last visited Feb 29, 2024).

Defendants' argument fails on a more fundamental level, predicated as it is on a misinterpretation of Plaintiffs' Complaint. In asserting that Plaintiffs' disputes were "legal" in nature, Defendant assumes that the disputes were based on an argument that "presence of scorpions and snakes on the premises excused Plaintiffs' breach of their Lease Agreement" Motion, pg. 8.

But this is incorrect. Plaintiffs' disputes were instead based on the assertion that Encantada had entered into a subsequent contractual agreement with Plaintiffs under which no further payments were owed. *See* Complaint, ¶ 62. Thus, Defendants' description of the issue to be determined by an investigation is inaccurate. The question is not "whether [Plaintiffs] **should have been** excused from the terms of their written lease agreement…" Motion, pg. 3 (emphasis added). The question is whether Plaintiffs **were in fact** excused from the terms of their written lease agreement by a subsequent contract. This alone distinguishes every citation provided by Defendants on this issue.

Defendants acknowledge this (albeit as an afterthought), following up their misrepresentation of Plaintiffs' dispute as being founded on "whether the presence of scorpions and snakes on the premises excused Plaintiffs' breach of their Lease Agreement" by noting the actual, relevant question: "…whether the landlord entered into a binding oral agreement to allow them to breach the lease…". Defendants then assert that this is a "legal question[] that should be adjudicated by a Court rather than

[….] Defendants." Motion pgs. 8-9.

Defendants cite to a single case as "support" for this assertion: *Batterman v. BR Carroll Glenridge, LLC* (No. 1:19-CV-1598-CC-RDC, 2020 U.S. Dist. LEXIS 63117, (N.D. Ga. Apr. 10, 2020)). This citation is perplexing because *Batterman* did not find that the question of whether a contract was formed was a legal question.[6] Instead, the dispute at issue in *Batterman* turned "on the questions of whether Plaintiff's apartment became uninhabitable, whether the lease automatically ended or was terminated prematurely by Plaintiff, and whether the liquidated damages provision is enforceable against Plaintiff." *Id.*, at *19. All questions which have nothing to do with whether a contractual agreement for early termination and release of future rents was – in fact – entered into by the tenant and landlord.

In fact, the court in *Batterman* explicitly noted that facts such as those alleged in Plaintiffs' Complaint were not at issue. "While Plaintiff alleges that [the landlord] acknowledged Plaintiff's termination of the lease agreement, **Plaintiff does not allege that [the landlord] ever conceded that Plaintiff's termination of the lease agreement released him from paying liquidated damages**." *Id.*, at *20 (emphasis added). And that is specifically what Plaintiffs allege in this case: that the landlord, Encantada, entered into an agreement with Plaintiffs to mutually walk away from

[6] As noted previously, such a finding would render every single inaccuracy on a consumer report "legal" in nature because all consumer debts are predicated on contract formation.

the lease agreement, waiving future compliance from either party. This is a factual question. Did Plaintiffs and Encantada enter into such an agreement? If so, the debts being reported as owing are not – in fact – owed by Plaintiffs.

The Second Circuit's opinion in *Sessa* is again instructive, noting that

> even if the District Court had been correct that the legal or factual nature of an inaccuracy was decisive, there does not appear to be any legitimate legal dispute regarding the inaccuracy of the reported balloon payment. **There simply was no balloon payment due -- as a matter of fact.**

*Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 n.7 (2d Cir. 2023) (emphasis added).

Here, Plaintiffs have alleged that – as a matter of fact – no payments were due. Thus, the question regarding accuracy is not "[w]hether the presence of scorpions and snakes on the premises excused Plaintiffs' breach of their Lease Agreement." Motion, pg. 8. The question is whether Encantada contractually released Plaintiffs from any further obligations under the lease, as Plaintiffs have affirmatively alleged. *See* Complaint, ¶ 62. This is an inherently **factual** allegation. *See Armao*, 218 So. 3d at 485 ("The existence of an oral contract is an issue for the finder of fact."). Thus, regardless of what side of the "legal versus factual" debate the Court happens to come down on, Plaintiffs' disputes were factual in nature and thus actionable under the FCRA.

## V. <u>CONCLUSION</u>

For these reasons, Plaintiffs respectfully request that the Court deny

Defendant's Motion in full.

Dated: March 13, 2024

/s/ Michael H. Rapp
Michael H. Rapp, KS Bar #25702
*Pro hac vice*
CONSUMER ATTORNEYS
1600 Genessee, Suite 435
Kansas City, MO 64102
T: (816) 291-4551
F: (718) 715-1750
E: mrapp@consumerattorneys.com

Catherine Tillman, Esq., (FL # 0057663)
**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com

*Attorneys for Plaintiffs*
*Rajiv Kanani and Asita Karia*

# CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

**CONSUMER ATTORNEYS**

By: *<u>/s/ Eugene Nowak</u>*